**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| KAREEM J. STANSBURY | : | |
| | : | |
| Appellant | : | No. 3479 EDA 2016 |

Appeal from the Judgment of Sentence October 26, 2016
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0006484-2014,
CP-51-CR-0006485-2014

BEFORE: BOWES, J., OLSON, J., and NICHOLS, J.

MEMORANDUM BY OLSON, J.:                    **FILED APRIL 17, 2018**

Appellant, Kareem J. Stansbury, appeals *pro se* from the judgment of

sentence entered on October 26, 2016.[1]  We affirm.

---

[1] Prior to trial, Appellant's court-appointed counsel, Richard Giuliani, Esquire, filed a petition to withdraw as counsel; within the petition, Attorney Giuliani averred that Appellant "wishes to represent himself."  **See** Petition to Withdraw, 12/9/14, at 2.  As a result, on December 16, 2014, the trial court entered an order, which took the petition to withdraw under advisement and ordered a psychiatric evaluation to determine Appellant's competency and ability to represent himself.  On January 16, 2015, the trial court held a waiver of counsel hearing, where the trial court colloquied Appellant on his request to proceed *pro se*.  N.T. Waiver Colloquy, 1/16/15, at 1-18; see also Pa.R.Crim.P. 121(A) and (C).  At the conclusion of the hearing, the trial court granted Appellant's request to proceed *pro se* and appointed David Simon, Esquire to be Appellant's stand-by counsel.  N.T. Waiver Colloquy, 1/16/15, at 8.

We note that Appellant has not requested that counsel represent him in this appeal and he has, instead, continued his *pro se* representation.  **C.f. Commonwealth v. Phillips**, 141 A.3d 512, 521 (Pa. Super. 2016) ("once a

*(Footnote Continued Next Page)*

The trial court ably summarized the facts that underlie this appeal:

On February 23, 2014, Ms. Rachel Ostrow was living at [a home on East Tioga Street, in Philadelphia. She lived] in a residence she shared with a woman named Patricia [Clarke], Ms. [Clarke's] two children and, at times, a woman names Luz Ambert-Prieto. That same day, all of these individuals were at the residence[,] as was Abdul Scott, Appellant's step-brother.

At about 11:00 p.m., Ms. Ostrow was sitting on the porch of the residence with Abdul Scott smoking "K2," *i.e.* synthetic marijuana, when Appellant drove up in a [four-door, dark-colored] car with tinted windows. Appellant stopped the car outside the residence, exited it, and began firing a handgun[,] which he rested on the roof of the car. Ms. Ostrow was struck in the back by bullet fragments as she [and] Abdul Scott fled into the residence. Pressure was applied to her wounds. As he tended to Ms. Ostrow, Abdul Scott began apologizing to her because he said his brother Kareem had shot her.

Ms. Ostrow was taken to a nearby hospital where her injuries were treated. The next day, she gave police a statement wherein she described the shooter as follows: "Tall, black male, dark skin. He had a beard and mustache and he was husky. He had on a black shirt?" At trial, Ms. Ostrow could not identify the shooter, which she was also unable to do at the scene. She also could not recall whether or not she saw the shooter holding the gun, flashes emanating from the gun, or if the shooter said anything during the incident. However, she told police when she was interviewed that she had witnessed those things and that the shooter said, "Yo" or "Abdul." In response to a question by the prosecutor about the contents of her statement, Ms. Ostrow averred that if she did tell the police about those matters, she had spoken the truth.

_(Footnote Continued)_ ———————————

defendant has made a competent waiver of counsel, that waiver remains in effect through all subsequent proceedings in that case absent a substantial change in circumstances").

- 2 -

Ms. Ambert-Prieto was on the porch just prior to the shots being fired[,] smoking K2 with Ms. Ostrow. While Ms. Ambert-Prieto was on the porch, Abdul Scott ran onto the porch, sweating, out of breath[,] and [with rumpled clothes]. Ms. Ambert-Prieto jokingly asked if he was running from the police. Abdul Scott responded that he was running from his brother Kareem. He then explained that he and his brother had just had an argument. After he arrived he also smoked some of the K2.

Ms. Ambert-Prieto went inside to get boots belonging to Ms. Ostrow and when she did so, she heard two shots. She immediately went outside and saw Abdul Scott tending to Ms. Ostrow's gunshot wounds as she lay on the porch. Abdul Scott took Ms. Ostrow inside and, after putting her on the couch, continued to tend to her wounds. Ms. [Clarke] called 911. During the call, Abdul Scott and the other people present began screaming, all of which was recorded by the police dispatcher who answered the call. The screaming included identifying the shooter as Kareem Stansbury, Abdul Scott's brother.

Police arrived and took Abdul Scott and Ms. Ambert-Prieto to a police station where both of them were interviewed. Ms. Ambert-Prieto identified a photograph of Appellant during the interview. She admitted giving the police a false address and explained that she did so because she did not want [] the police to know she resided [at the East Tioga Street home]. During Appellant's questioning of Ms. Ambert-Prieto, she [testified] that she saw Appellant armed with a hand gun a few months prior to the incident.

At trial, Abdul Scott took the stand. He began his testimony by noting that, although he had a half-brother named Kareem Stansbury, he did not then see him in the [courtroom]. He then testified that on the day of the shooting, he and Kareem had argued inside his mother's house but that the argument did not involve violence. He denied that it spilled into the street and stated that after it broke up, he went to [the East Tioga Street house].

Abdul Scott testified that when he arrived at the residence, Ms. Ostrow was on the porch and Ms. Ambert-Prieto was

inside the residence. According to Abdul Scott, [Ms. Ambert-Prieto] remained in the house the entire time. While on the porch, Abdul Scott heard gunshots and saw that Ms. Ostrow had been shot. He rendered aid to her and took her inside the residence.

After Abdul Scott gave the foregoing testimony, he was confronted by the prosecutor with the contents of a statement he gave Philadelphia Police Detective Joseph Newbert on February 24, 2014, approximately an [hour-and-a-half] following the shooting. In his statement, Abdul Scott admitted that he and [Appellant] had a fist-fight at his residence [and] that it was broken up by his other brothers. He further told police that after the fight broke up, he told his brother Jabbar that he was going to [the East Tioga Street house].

He further told police that he was sitting on the porch at about 11:00 p.m., with Ms. Ostrow, when [Appellant] drove down the street in a 1995 purple Chevy Cavalier registered to his mother. He told police:

> When he came down the street, he stopped right in front of the house, got out and stood in the street and fired his gun two times at me. The first shot missed, and the second shot hit Rachel in the hip. Then Kareem jumped back in his car and drove off towards Ella from Tioga.

Abdul told police that "Kareem" possessed a silver .22 caliber hand gun, that "Kareem" threatened to shoot him earlier in the evening, and that he cursed at him during the incident on Tioga Street when Ms. Ostrow was shot. Abdul Scott ended the interview by identifying a photograph of Appellant, who he called "Kareem".

After giving his statement, [Abdul] Scott acknowledged that the photograph he identified for police depicted Appellant. He testified that Appellant did not shoot at him on the night of the incident, and that he did not tell police that Appellant had done so. He testified that he only told police that Appellant was the brother with whom he was fighting earlier in the evening.

After disavowing much of his statement, Abdul Scott denied that the voice on the 911 tape, wherein the speaker named "Kareem" as the shooter and described him, was his. He ended his testimony by acknowledging that he was then in custody awaiting sentencing in an unrelated matter.

On cross-examination, Abdul Scott denied anything that could be considered incriminating with respect to Appellant. He also testified that he was intoxicated on the night of the incident and had smoked K2 while on the porch.

Philadelphia Police Officer Ricardo Rosa was on routine patrol at 11:16 p.m., when [he responded] to the scene of the shooting. Upon arrival, Abdul Scott exited [the East Tioga Street house], ran to the officer, and urged him to hurry because there was a shooting victim inside the residence. The officer then encountered Ms. Ostrow, placed her in his police vehicle, and drove her to a nearby hospital.

When the officer first encountered Abdul Scott, he was very agitated and demonstrative. The officer testified that Abdul Scott told him that his brother, Kareem Stansbury, had driven up in a purple [two-door] Chevrolet and pointed a gun at him, which he then fired at him. Abdul Scott gave the officer a description of the shooter.

Patricia Clarke was inside the [East Tioga Street home] when Ms. Ostrow was shot. She directed Ms. Ostrow, Ms. Ambert-Prieto, and Abdul Scott to go outside after they said they were going to smoke K2 inside the residence. Approximately [15] minutes after they went outside, Ms. Ambert-Prieto ran into the residence screaming that Ms. Ostrow had been shot. After observing Abdul Scott treating Ms. Ostrow, Ms. Clarke called 911. As she was on the phone with a police dispatcher, Abdul Scott was yelling that his brother, Kareem, who Ms. Clarke identified as Appellant [], shot Ms. Ostrow. Ms. Clarke testified that the male's voice on the 911 recording identifying Appellant as the shooter was that of Abdul Scott.

Ms. Clarke was taken to the police station where she was interviewed. Ms. Clarke stated that she was completely sober and lucid. She did not appear to be intoxicated according to the officer who interviewed her.

- 5 -

Appellant presented evidence of alibi consisting of testimony and documents he argues proved that he was at a minimart located about [20] minutes from the scene of the shooting. He also introduced evidence that he did not fight with his half-brother Abdul Scott.

Trial Court Opinion, 6/26/17, at 2-7 (internal citations and footnotes omitted).

On May 27, 2016, the jury found Appellant guilty of two counts of attempted murder, three counts of aggravated assault, and one count each of carrying firearms in public in Philadelphia and firearms not to be carried without a license.[2] N.T. Trial, 5/27/16, at 53-54. On October 26, 2016, the trial court sentenced Appellant to serve an aggregate term of 35 to 70 years in prison, followed by 7 years of probation, for his convictions. N.T. Sentencing, 10/26/16, at 8-9.

Appellant filed a timely notice of appeal. He raises eight claims in his brief:

[1.] Whether the [trial] court violated Appellant's right to a fair and impartial tribunal, secured by the 14th Amendment to the United States Constitution, as well as [Article 1, Section] 9 of the Pennsylvania Constitution when the trial judge agreed to recuse himself and ten days later denied the recusal request and tried the case[?]

[2.] Whether the suppression court erred by denying to suppress Abdul Scott and Luz [Prieto] single photo arrays identifications by relying on inadmissible hearsay testimony?

_____

[2] 18 Pa.C.S.A. §§ 901(a), 2702(a), 6108, and 6106(a)(1), respectively.

[3.] Whether the [trial] court erred by denying [] Appellant funds to obtain expert witnesses to testify in support of defense [theories]?

[4.] Whether [] Appellant's trials commenced in violation of the speedy trial clause?

[5.] Whether the [trial] court violated Appellant's rights to confront and cross-examine the witnesses against him, secured by the 6th and 14th Amendment to the United States Constitution, as well as Article 1[, Section] 9 of the Pennsylvania Constitution, when the trial court over defense objection allowed the Commonwealth to read into the record Rachel Ostrow's medical diagnosis without the treating physician being available for cross-examination?

[6.] Whether the [trial] court violated [Appellant's] right to a fair and impartial trial, secured by the 14th Amendment to the United States Constitution, as well as Article 1[, Section] 9 of the Pennsylvania Constitution, when the trial judge denied the jury's request to deliberate with properly admitted defense exhibits?

[7.] Whether the [trial] court violated [Appellant's] right to a fair and impartial trial, secured by the 14th Amendment to the United States Constitution, as well as Article 1[, Section] 9 of the Pennsylvania Constitution, when the trial judge submitted to the jury the Commonwealth's written jury instructions on attempted murder, aggravated assault, [and] violation of the uniform firearms act?

[8.] Whether the [trial] court erred in denying [] Appellant a trial based on after discovered evidence?

Appellant's Brief at 6-7 (some internal capitalization omitted).

We have reviewed Appellant's brief,[3] the relevant law, the certified record, the notes of testimony, and the opinion of the able trial court judge,

---

[3] The Commonwealth did not file a brief in this case.

the Honorable Daniel D. McCaffery. We conclude that there has been no error in this case and that Judge McCaffery's opinion, entered on June 26, 2017, meticulously and accurately disposes of Appellant's issues on appeal. Therefore, we affirm on the basis of Judge McCaffery's thorough opinion and adopt it as our own. In any future filing with this or any other court addressing this ruling, the filing party shall attach a copy of Judge McCaffery's opinion.

Judgment of sentence affirmed. Jurisdiction relinquished.

Judge Bowes joins.

Judge Nichols concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/17/18

3479 EDA 201

IN THE COURT OF COMMON PLEAS
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
TRIAL DIVISION-CRIIVÐNAL SECTION

COMMONWEALTH OF PENNSYLVANIA     : PHILADELPHIA COURT

        : OF COMMON PLEAS

        : CRIMINAL TRIAL DIVISION

        : CP-5r-CR-0006484-201¶

        : CP-51-CR-0006485-201H

        :

        :

        :

KAREEM STANSBURY              :

FLED
UUN 2 6 2017

Office of Judicial Records
Appeals/Post Trial

## OPINION

MCCRFFERY, J

Kareem Stansbury (hereinafter "Appellant") appeals from the order this Court entered on October 26, 2016, imposing judgment of sentence. For the reasons set forth below, it is suggested that the said order be affirmed.

PROCEDURAL HISTORY

In January, 2016, following the disposition of numerous pretrial motions, Appellant appëúed befòre this Court and a jury for trial on charges of Attempted Murder, pursuant to 18 Pa.C.S. § 901 and 18 Pa.C.S. § 2501 (two counts ), Aggravated Assault, pursuant to 18 Pa.C,S. § 02(a)(1)(two counts), Possession of a Firearm Prohibited, pursuant to 18 Pa.C.S. § 6105, Carrying a Firearm without a License, pursuant to 18 Pa.C.S. § 6106, and Carrying a Firearm on a Public Street, 18 Pa.C.S. § 6108. At the conclusion of the trial, after the jury announced that it was hopelessly deadlocked, this Court declared a mistrial.

Appellant's second trial commenced in May, 2016, again betOrc this Court and a jury. On



CP-51-CR-0006484-2014 Comm. v. Stansbury, Kareem J
Opinion

7966160451

May 27, 2016, Appellant was found guilty of all of the above-listed charges, [I] The Court deferred sentencing until October 17, 2016, on which date Appellant received an aggregate sentence of forty to eighty years' incarceration. Following the imposition of sentence, the Commonwealth filed a Motion for Reconsideration of Sentence predicated on legal issues calling into question the legality of some of the individual sentences imposed on Appellant, This Court granted the motion and vacated Appellant's sentence. This Court then imposed an aggregate sentence of thirty-five to seventy years' incarceration. Appellant thereafter filed a timely notice of appeal and a court-ordered Pa.R.A.P. 1925(b) Statement of Matters wherein he raised twenty-seven separate issues.2

FACTUAL HISTORY

On February 23, 2014, Ms. Rachel Ostrow was living at 227 East Tioga Street in Philadelphia, in a residence she shared with a woman named Patricia Clark, Ms. Clark's two children and, at times, a Woman named Luz Ambert-Prieto. (N.T. 5/25/16, 50-51). That same day, all of these individuals were at the residence as was Abdul Scott, Appellant's step-brother. (N.T. 5/25/16, 51-52).

At about 11:00 p.m., Ms. Ostrow was sitting on the porch of the residence with Abdul Scott smoking "K2 " i. e. , synthetic marijuana, when Appellant drove in a four door dark colored car with tinted windows. (N.T. 5/25/16, 53-54, 69). Appellant stopped the car outside the residence, exited it, and began firing a handgun which he rested on the roof of the car. (N.T. 5/25/16, 554-55, 81). Ms. Ostrow was struck in the back by bullet fragments as she ans Abdul Scott fled into the residence. Pressure was applied to her wounds. (N.T. 5/25/16, 56; N.T.

2

The charge of Possession of a Firearm Prohibitcd was not presented to the jury for a verdict. instead, following the [ecording of lht verdict with respect to the other charges, a stipulažcd trial was Theld before this Court, which found

Appellant guilty of the weapons charge at the conclusion thereof. (N.T. 5/27/16, 58-59). [2] Appellant represented himself at Iriakand is doing so on direct appeal.

5/26/16, 74)? As he tended to Ms, Ostrow, Abdul Scott began apologizing to her because he said his brother Kareem had shot her. (N.T. 5/25/16, 56, 71).

Ms. Ostrow was taken to a nearby hospital where her injuries were treated. The next day, she gave police a statement Wherein she described the shooter as follows: "Tall, black male, dark skin. He had a beard and mustache and he was husky. He had on a black shirt"? . (N.T. 5/25/16, 65, 74). At trial, Ms. Ostrow could not identify the shooter, which she was also unable to do at the scene. She also could not recall whether or not she saw the shooter holding the gun, flashes emanating from the gun, or if the shooter said anything during the incident, However, she told police when she was interviewed that she had witnessed those things and that the shooter said, ""Ÿo" or "Abdul." In response to a question by the prosecutor about the contents of her statement, Ms. Ostrow averred that if she did tell the police about those matters, she had spoken the truth. (N.T. 5/25/16, 66-68, 83).

Ms. Ambert-Prieto was on the porch just prior to the shots being fired smoking K2 with Ms. Ostrow, (N,T. 5/25/16, Ill-1 12). While Ms, Ambert-Prieto was on the porch, Abdul Scott ran onto the porch, (N.T. 5/25/16, 99) sweating, out of breath and his clothes were rumpled. Ms. Ambert-Prieto jokingly asked if he was running from the police, (14). Abdul Scott responded that he was running from his brother Kareem. He then explained that he and his brother had just had an argument. After he arrived he also smoked some of the K-2. (N.T. 5/25/16, I 1 5)

Ms. Ambert-Prieto went inside to get boots belonging 10 Ms. Ostrow and when she did so, she heard two shots. (N.T. 5/25/16, 100-101). She immediately went outside and saw Abdul

3

[3] Police received metal fragments from hospital personnel that had been removed from Ms. Ostrow's body. (N.T. 5/26/16, 142-143). Although testing of them could not definitively delennine that they wcrc once part of a bulleL, thc composition of the fragments was consistent with that ofa bullet. (N.T. 5/26/16, 123-125).

Scott tending to Ms. Ostrow's gunshot wounds as she lay on the porch. (N.T. 5/25/16, 101). Abdul Scott took Ms, Ostrow inside and, after putting her on the couch, continued to tend to her wounds, (N.T. 5/25/16, 102). Ms. Clark called 911. During the call, Abdul Scott and the other people present began screaming, all of which was recorded by the police dispatcher who answered the call. (N.T. 5/25/16, 103-109). The screaming included identifying the shooter as

Kareem Stansbury, Abdul Scott's brother.

Police •arrived and took Abdul Scott and Ìv1s. Ambert-Prieto to a police station where both of them were interviewed. Ms. Ambert-Prieto identified a photograph of Appellant during the interview. (N.T. 5/25/16, 125). She admitted giving the police a false address and explained that she did so because she did not want to the police to know she resided at 227 East Tioga Street. (N.T. 5/25/16, 1 13). During Appellant's questioning of Ms. Ambert-Prieto, she stated that she saw Appellant armed with a hand gun a few months prior to the incident. (N.T. 5/25/16, 133),

At trial, Abdul Scott took the stand. He began his testimony by noting that, although he had a half-brother named Kareem Stansbury, he did not then see him in the court room. (N.T. 5/25116, 137-139, 150-151M He then testified that on the day of the shooting, he and Kareem had argued inside his mother's house but that the argument did not involve violence. (N.T. 5/25/16, 141-143) He denied that it spilled into the street and stated •that after it broke up, he went to 227 Easl Tioga Street. (N.T. 5/25/16, 143-144).

Abdul Scott testified that when he arrived at the residence, Ms. Ostrow was on the porch and Ms. Ambert-Prieto was inside the residence. According to Abdul Scott, she remained in the

house the entire time. (N.T. 5/25/16, 145-147). While on the porch, Abdul Scott heard gunshots and saw that Ms. Ostrow had been shot. (N.T. 5/25/16, 147-148). He rendered aid to her and

[4] Duting appellant's first trial Abdul Scott also testified that he did not see his half-brother, who stated was named Kareem Slansbury, in the court room. (N.T. 5/25/]6, 150).

took her inside the residence. (N.T. 5/25/16, 148-149),

After Abdul Scott gave the foregoing testimony, be was confronted by the prosecutor with the contents of a statement he gave Philadelphia Police Detective Joseph Newbert on February 24, 2014, approximately an hour and one-half following the shooting' In his statement, Abdul Scott admitted that he and Kareem had a fist-fight at his residence that it was broken up by his other brothers. (N.T. 5/25/16, 160-161, 222-234). He further told police that after the fight broke up, he toid his brother r$^e$abbar that he was going to 227 East Tioga Streetl (N.T. 5/25/16, 160).

He further told police that he was sitting on the porch at about I l p.m., with Ms. Ostrow, when his brother Kareem drove down the street in a 1995 purple Chevy Cavalier registered to his mother. (N.T. 5/25/16, 163-164). [6] He told police:

> When he came down the street, he stopped right in front of the house, got out and stood in the street and fired his gun two times at me. The first shot missed, and the second shot hit Rachel in the hip. Then Kareem jumped back in his car and drove off towards Ella from Tioga.

N.T. 5/25/16, 165.

Abdul Scott told police that "Kareenp possessed a silver .22 caliber hand gun, that "Kareem" threatened to shoot him earlier in the evening, and that he cursed at him during the incident on Tioga Street when Ms. Ostrow was shot. (N.T. 5/25/16, 166-168). Abdul Scott ended the interview by identifying a photograph of Appellant, who he catlcd "Kareem". (N.T.

5

5/25/16, 168-169).

After giving his statement, Scott acknowledged that the photograph he identified tor

_____

[5] Abdul Scott disavowed everything in that statement that inculpated Appellant in the shooting of Ms. Ostrow.

[6] Police investigation later confirmed that a purple Chevy Cavalier was registered to Appellant's mother, Pamela Stansbury. (N.T. 5/26/16, 76),

police depicted Appellant. He testified that Appellant did not shoot at him on the night of the incident, and that he did not tell police that Appellant had done so. (N.T. 5/25/16, 169). He testified that he only told police that Appellant was the brother with whom he was fighting earlier in the evening, (IÀ).

After disavowing much of his statement, Abdul Scott denied that the voice on the 911 tape, wherein thc speaker named "Kareem" as the shooter and described him, was his. (N.T. 5/25/16, i 71-173). He ended his testimony by acknowledging that he was then in custodÿ awaiting sentencing in an unrelated matter. (N.T. 5/25/16, 178-179),

On cross-examination, Abdul Scott denied anything that could be considered incriminating with respect to Appellant. He also testified that he was intoxicated on the night of the incident and had smoked K.2 while on the porch. (N.T. 5/25/16, 188-189).

Philadelphia Police Officer Ricardo Rosa was on routine patrol at 11:16 p.m., when he was responded to police radio to the scene of the shooting, (N.T. 5/25/16, 203-204) Upon arrival, Abdul Scott exited 227 East Tioga Street, ran to the officer, and urged him to hurry because there was a shooting victim inside the residence. (N.T. 5/25/16, 206-207). The officer then encountered Ms. Ostrow, placed her in his police vehicle, and drove her to a nearby hospital.

When the officer first encountered Abdul Scott, he was very agitated and demonstrative.

6

(N.T. 5/25/16, 201). The officer testified that Abdul Scott told him that his brother, Kareem Stansbury, had driven up in a pumle two door Chevrolet and pointed a gun at him, which he then fired at him. (N.T. 5/25/16, 210-211). Abdul Scott gave the officer a description of the shooter. (NT- 5/25/16, 213).

Patricia Clarke was inside 227 East Tioga Street when Ms. Ostrow was shot. (N.T. 5/26/16, 10). She directed Ms, Ostrow, Ms. Ambert-PrietO, and Abdul Scott to go outside after they said they were going to smoke K2 inside the residence. (N.T. 5/26/16, 10). Approximately fifteen minutes after they went outside, Ms. Ambert„Prieto ran into the residence screaming that Ms. Ostrow had been shot. (N.T. 5/26/16, 10). After observing Abdul Scott treating Ms. Ostrow, Ms. Clarke called 911, (N.T. 5/26/16, 10-12). As she was on the phone with a police dispatcher, Abdul Scott was yelling that his brother, Kareem, who Ms. Clarke identified as Appellant herein, shot Ms. OŠtrow. (N.T. 5/26/16, 14-16). [7] Mg. Clarke testified that the male's voice on the 911 recording identifying Appellant as the shooter was that of Abdul Scott. (N.T. 5/26/16, 6).

Ms. Clarke was taken to a police station where she was interviewed. Ms. Clarke stated that she was completely sober and lucid. She did not appear to be intoxicated according to the officer who interviewed her. (N.T. 5/26/16, 134),

Appellant presented evidence of alibi consisting Of testimony and documents he argues proved that he was at a located about twenty minutes from the scene of the shooting. He also introduced evidence that he did not fight with his half-brother Abdul Scott.

## DISCUSSION

In his se 1925(b) staternent; Appellant raises 27 discrete claims. With regard to many of those claims, Appellant fails to idcnti19 the place in Lhc record where the alleged error appcars and/or concisely state his claim in a manner discernible to this Court. As a consequence thereof,

7

this Court respcctfully submits that Appellant waived appellate review of many of these claims.

Pa.R.A.P 1925 mandates that an appellant "concisely identify each ruling or error that the appellant intends to challenge with sufficient detail to identify all pertinent issues." Pa.R.A.P.

---

'I Duringher testimony, the prosecutor played a recordingofthe 91 1 call Ms. Clarke made and she identified the only ale voice on it as that of Abdul Scott. (N.T- 5/26/16, 16).

1925(b)(4)(ii). Furthermore, Rule 1925th) precludes a defendant from filing a protracted 1925(b) statement or brief and expect this Court to mine the issues from a rambling argument. SeeCommonwealth v, Allshouse, 969 A.2d 1236, 1239 (Pa, Super, 2009). ("When a court has to guess what issues an appellant is appealing, that is not enough for meaningful review,"). The law requires that a defendant assert claims with Specificity, S_gg Commonwealth v. Berry, 877 A.2d 479, 485 (Pa. Super. 2005) ("issues that are not supported by citations to the record and to pertinent legal authority are waived?'); Allshouse, 969 A.2d at 1239 ("When an appellant fails adequately to identify in a concise manner the issues sought to be pursued on appeal, the trial court is impeded in its preparation of a legal analysis which is pertinent to those issues."), Finally, simply because Appellant chose to represent himself does not immunize him from the foregoing principles of law. Commonwealth v. Adams, 882 A.2ð 496, 498 (Pa.Super. 2005). "To the contrary, any person choosing to represent himself in a legal proceeding must, to a reasonable extent, assume that his lack of expertise and legal training will be his undoing." Id.

Despite Appellant's failure to comply with the dictates of Rule 1925, this Court will endeavor, as best as it can, to address the claimed errors.

In his first two claims, Appellant argues that it was error to deny two pre-trial motions, the first of which sought to dismiss the charges filed against Appellant following his prehrninarÿ hearing. The second motion was a combined Writ of Habeas Corpus and Motion to Quash the Transcript. In both motions Appellant argued that he was dcnied due process and the right to

8

confront witnesses against him because the Commonwealth solely relied on hearsay testimony al his preliminary hearing.

Relief should be denied on these claims because the law is clear. Errors occuning during a preliminary hearing are not cognizable fallowing a conviction. <u>Commonwealth v. Jacobs</u>, 640 A.2d 1326, 1330 (Pa. Super. 1994) ("It is well settled that once a defendant has gone to trial and been found guilty of a crime, any defect in the preliminary hearing is rendered immaterial.") (Citations and internal quotation marks omitted). Accordingly, because the jury found Appellant guilty, relief cannot be obtained on Appellant's first two issues and it is suggested that they be deemed lacking in merit.

In his third claim, Appellant contends that this Court committed error by denying his motion {o Suppress the photographic identifications made by Abdul Scott and Mg. Ambert-Priet0 because the identifications were made under unduly suggestive circumstances. Specifically, Appellant asserts that his motion to suppress should have been granted because they were both shown a single photograph of Appellant and then asked if it depicted Appellant. (N,T, 4/23/16, 4-10). It is suggested that relief be denied on this claim because both witnesses knew Appellant prior to their identification sessions. [8]

"When reviewing an order denying suppression, this Court must review the record in the Eight most favorable to the Commonwealth, as verdict winner, and determine whether the trial court's factual findings are supported by the record." <u>Commonwealth v. Rickabaugh,</u> 706 A.2d 826, 832 (Pa, Super. 1997). As long as "there is support in the record for the court's factual findings, this Court will not reverse the order denying suppression unless the legal conclusions drawn from those facts are in error." Id. at 832-33. In conducting this review, this Court "may

9

consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradited when rcad in the context of the record as a whole." Commonwealth v. Moye, 836 A.'2d 973, 976 (Pa. Super. 2003).

---

E This Courl made Findings oN^G act and rcached Conclusions ol- Law tOIIowing the suppression hearings. (N.T. 4/23/15, 49-53). They¼lre incorporated in herein,, It is noted that with regard to Ms. Ambert-Prieto, this Court indicated that her identification of the depicting: Appellant way not suppressed because she did not .witness the shooting and would u10t identify him as the shooter at trial.

"In reviewing the propriety of identification evidence, the central inquiry is whether, under the totality of the circumstances, the identification was reliable." McElrath v. Cqmmonwealth, 592 A.2d 740, 742 (Pa. super. 1991). A pre-trial identification is not suppressible unless "the identification procedure was so infected by suggestiveness as to give rise to a substantial likelihood of irreparable misidentification." Commonwealth v. Sample, 468 A.2d 799, 801 (Pa. Super. 1983) (quotation marks and citations omitted). Finally, the law is clear that the showing of a $inglc photograph does not necessarily render an identification unreliable. Commonwealth v. Buehl, 508 A.2d 1167, 1178 (pa. 1986).

A review of the totality of circumstances in this matter establishes the reliability of the identifications. Both witnesses knew Appellant prior to the shooting. Abdul Scott is Appellant'S half-brother. Ms. Ambert-Prietto is an acquaintance who knew Appellant prior to the incident, Thus, the use of a single photograph during the identification sessions does not render the identifications unreliable. See Commonwealth v: _ Johnson, 139 A.3d 1257, 1278-79 (Pa. 2016) (showing of a single photograph to a witness was not unduly suggestive because the witness "had known the defendant for a nurnber of years prior to the incident"); Commonwealth v. Jones, 426 A.2d 1167, 1170-71 (Pa. Super. 1981) (identification by single photograph admissible based on "facts that the Witness k.ncw the Appellant prior to the robbery, viewed him at close range during

10

the incident, and identified him by name to police prior to seeing the single photo"). Accordingly, for the foregoing reasons. Appellant's claim with regard to this issue should be rejected.

Appellant's fourth issue contains three independent claims. First, he argues that this Court erred by denying his Motion in Limine to bar the admission of a recording of the 911 call because it was inadmissible hearsay. Next, he contends that it was error for the Court to preclude Abdul Scott, Rachel Ostrow, Luz Ambert-Prieto, and Patricia Clarke from testifying pursuant to commonwealth v. Pazemore, 614 A.2d 684 (Pa. 1992), because the Commonwealth did not provide hint With the witnesses' statements prior to the preliminary hearing thereby depriving him of a Fall and fair opportunity to cross-examine the witnesses during the preliminary hearing. Finally, Appellant argues that the Court erred by overruling an objection to the Commonwealth's admission, in rebuttal, of his prior 2005 conviction for robbery in federal court. (N.T. 5/26/16, 217, 222). It is suggested that none Of these claims entitle Appellant to any relief.

Evidentiary rulings are committed to the sound discretion of the trial court and will not be reversed unless a clear abuse of discretion is demonstrated. 612 Commonwealth y. A.2d 1349 (Pa. 1992). "An abuse of discretion is more than just an error in judgment and, on appeal, the trial court will not be found to have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill.Will." Commonwealth v. He", 745 A.2d 29, 31 (Pa, Supers 2000); Foy, supra (Pa. 1992). In addition, the trial court is required to balance the Commonwealth's need for the evidence in question with any prejudice arising therefrom. See Commonwealth v. Jones, 658 A.2d 746, 751 (Pa. 1995) (citing Commonwealth v. Yates, 613 A.2d 542, 543 (Pa. 1992))." Commonwealth v. Montalvo 986 A.2d 84, 95 (Pa. 2009). Finally, "for a ruling on evidence to constitute reversible error, it must have been harmful or prejudicial to the complaining party. A party suffers prejudice

11

when the trial court's error could have affected the verdict." <u>Commonwealth v- Tyack</u>, 128 A.3d 254, 257 (Pa.Super. 2015) (citation omitted).

Appellant first argues that the 911 recording should not have been admitted in evidence because the caller (Ms. Clarke) had not witnessed the shooting. Thus, whatever she said during the call about the person responsible for the shooting was inadmissible hearsay, The tape of the call was played to the jury for the purpose of allowing the jury to hear what Abdul Scott said

during the call.

No error was committed by permitting the jury to hear the recording of the 911 call because while the remarks were technically hearsay they were admissible pursuant to exceptions to the hearsay rule. Abdul's remarks during the 911 call constituted excited utterances and Ms. Clarke's statements were present sense impressions. Thus exceptions to the hearsay rule. It is hornbook law that hearsay, an out-of-court statement offered to prove the truth of the matter asserted, is inadmissible except as provided by the Pennsylvania Rules of Evidence. Pa. R.E. 801(c), 802, Abdul Scott's comments were admissible excited utterances, which are "[al statement relating to a startling event or condition made while the declarant was under the stress or excitement caused by the event or condition." Pa. R.E. 803(2), Our Supreme Court has defined an "excited utterance" as follows:

> [AJ spontaneous declaration by a person whose mind has been suddenly made subject to an overpowering emotion caused by some unexpected and shocking occurrence, which that person has just participated in or closely witnessed, and made in reference to some phase of that occurrence which he perceived, and this declaration must be made so near the occurrence both in time and place as to exclude the likelihood of its having emanated in whole or in part from its reflective faculties.... Thus, it must be shown

12

> first, that [the declarant] had witnessed an event sufficiently startling and so close in point of time as to render her reflective thought processes inoperable and, second, that her declarations were a spontaneous reaction to that startling event.

Commonwealth v. Stallworth, 781 A.2d 1 10, 119-120 (Pa. 2001); Commonwealth v. Stokes, 615,

A.2d 704, 712 (Pa. 1992); Commonwealth v. Green, 409 A.2d 371, 373-374 (Pa. 1979). The

determination of whether an utterance qualifies under this exception is made on a case-by-casc

basis. Commonwealth v. Blackwell, 494 A.2d 426, 430-431 (Pa. Super. 1985). "The crucial question, regardless of time lapse, is whether, at the time the statement is made, the nervous

excitement continues to dominate while the reflective processes remain in abeyance."

Common.yglth-yž-gxay, 867 A.2d 560, 570-571 (Pa. super. 2005), appeal denied, 879 A.2d 781 .

(Pa. 2005) (citing Commonwealth v. Carmody, 799 A.2d 143, 147 (Pa. super. 2002)).

Instantly, the record clearly demonstrates the existence of a "startling event" witnessed by

Abdul Scott. Appellant, his half-brother, drove up, exiting a car, fired shots striking Ms.

Ostrow, and his frantic efforts to Stop the bleeding- All of these facts manifest that at the time he

made the remarks, Scott was witnessing startling events, Commonwealth v. Gray, 867 A.2d 560,

571 (Pa. Super. 2005) (Witnessing an assault is a startling event), and that he was still exhibiting

nervous excitement and emotional stress precipitated by Appellant'$ action, which were still

ongoing during the call Finally, the 911 call was made within minutes of the incident thereby

demonstrating that Scott's statements were made without the opportunity for conscious

deliberation or reflective thought processes. Given the foregoing, it is clear that there was no error

in permitting the Commonwealth to introduce the recording of the 911 call with respect to Abdul's

Scott's remarks during the call. See Commonwealth v. Rolan, 964 A.2d at 411-12 (911

call that was made contemporaneously with shooting and that reported that somcone had been

13

shot and that a man with a rifle wag seen entering an abandoned building was admissible under the excited utterance exception to the hearsay rule).[1]

Regarding the comments made by Ms. Clarke, they were admissible under the present sense impression exception to the hearsay rule. A present sense impression is a statement

describing "an event or condition," that is made while the declarant is perceiving the event, or immediately thereafter. Pa,R.E, 803(1); Commonwealth Cunningham, 805 A,2d 566, 572 (Pa. Super. 2002), "The trustworthiness of such remarks does not depend upon whether the declarant

is excited or is emotionally affected by the event." Commonwealth v. Gray, 867 A.2d 560, 571 (Pa- Super. 2005). Rather, a present sense impression is trustworthy because it is made so close in time to the event that "it is unlikely that the declarant had the opportunity to form the purpose of misstating his observation." Id.

Ms. Clarke's statements clearly satisfy those requirements. Ms. Clarke was merely repeating contemporaneously what Abdul Scott was saying. This was entirely proper. See Commonwealth v. Harris, 658 A.2d 392, 394 (Pa. Super. 1995) (murder victim's statement identifying Harris was admissible as present sense impression where it a "contemporaneous

---

[1] Even if the recording was admitted erroneously, the error was harmless because the Commonwealth introduced other evidence mirroring what Scott was heard saying on the tape ot• the 911 call. recover, as noted above; Scott testified at trial and was subject to cross-examination. See Commonwealth v. Romero, 722 A.2d where the in 1014, 1019 (Pa.) (harmless error, to admit statements which violated appellant's' confrontation rights guilt), cert. formation in the statements was cumulative or properly admitted evidence that established defendant's guilt), cert. denied, 528 ILS. 952 (1999).

14

verbalization of her observation" of him outside her door). Accordingly, Appellant's first subissue should be rejected.

Appellant's second sub-issue that the witnesses should have been precluded from testifying should be ruled lacking in merit for several reasons, First, the claim should be rejected because it involves error cornmitted during Appellant's prcliminary hearing. As noted above, such errors are do not entitlc a defendant to relief when raised post conviction.

The claim also should be rejected because the holding of the Bazemore case does not apply here. In Bazemore, the Supreme Court held that in order to introduce the prior testimony of an unavailable witness, the opposing party had to have had a full and fair opportunity to crossexamine the witness during the prior hearing. Bazemore 614 A.2d at 686. See also Commonwealth v, Paddy, 800 A.2d 294, 312 (Pa. 2002); Commonwealth v. Chmiel, 738 A.2d 406, 416 (Pa. 1999), cert. denied 528 U.S. 1 131 (2000). Instantly, each of the persons named by Appellant were available for trial and each of them testified. Thereforei Appellant's motion lacked legal support and was properly denied.

Finally, it is submitted that this Court did not err by permitting the Commonwealth to introduce evidence that Appellant had a prior robbery conviction. It is within the trial court's sound discretion to determine whether evidence of a defendant's prior convictions can be admitted for the purpose of impeaching his credibility, and this decision will not be disturbed absent an abuse of that discretion. Commonwealth v. McEnany. 732 A.2d 1263, 1269 (Pa.Snper. 1999).

No abuse of discretion occurred because the evidence of Appellant's prior robbery conviction was admissible pursuant to Pa.R.E. 609 and Commonwealth v. Randall, 528 A.2d 1326 (Pa. 1987). Rule 609 provides, in pertinent part:

Rule 609. Impeachment by Evidence of a Criminal Conviction

(á) In General. For the purpose of attacking the credibility of any witness, evidence that the witness has been convicted of a crime, whether by verdict or by plea of guilty or nolo contendere, must be admitted if it involved dishonesty or false statement.

(b) Limit on Using the Evidence After 10 Years. This subdivision (b) applies if more than 10 years have passed sincc the witness's conviction or release from confinement for it, whichever is later. Evidence Of the conviction is admissible only if:

(1) its probative valuc substantially outwcighs its prejudicial effect; and

(2) thc proponent gives an adverse party reasonable written notice of the intent to use it so thal t11C party has a fair opportunity to contest its use.

In Randall, at 528 A.2d 1329, the Pennsylvania Supreme Court held that "evidence of prior convictions can be introduced for the purpose of impeaching the credibility of a witness if the conviction was for an ollënse involving dishonesty or false statement, and the date of the conviction or the last day of confinement is within ten years of the trial date." (Emphasis added). Thus, the Court's rule extends not only ten years from the date of conviction for the offense, but also ten years from the last day Of cotffinement for the offense.

In the instant matter, Appellant's prior conviction for robbery is recognized as a crime involving dishonesty. McEnany., 732 A.2d at 1270 n.3, 1271. Although appellant was convicted of that offense in 2005, he received a sentence of thirty months' imprisonment. Thus, his incarceration was within was within ten years of thc commencement of the trial in the present case. f3ecause the conditions set forth in Rule 609 and Randall were met, Appellant's prior conviction was per se admissible to impeach his credibility once he testified. MgEnany, 732 A.2d at 1271 (where "date of appellant's second trial...was within the adjusted ten years of his 1986 conviction, it was per se admissible to impeach [his] credibility at his trial on remand"). Accordingly, Appellant's third sub claim of his fourth issue should not result in the grant of

16

relief.

Fifth, Appellant accuses this Court of committing an abuse of discretion by denying his request for funds to hire an expert for the purpose of introducing testimony that the use of K.2 affects memory and causes hallucinations. It is well-recognized that indigent dcfcndants have a right to access to the same resources as- non-indigent defendants, and the state must ensure the indigent defendant's fair opportunity to present a defense through competent evidence. Commonwealth v, Cumutte, 871 A.2d 839, 842 (Pa. Super- 2005), citing Commonwealth v. Franklin 823 A.2d 906, 909 (Pa- super. 2003), and Akc v. Oklahoma, 470 U.S. 68, 76 (1985). . However, "the Commonwealth is not obligated to pay for the services of an expert simply because a defendant requests one." Id. Rather, the decision to providc public funds to hire defense experts in a criminal matter is vested within the trial court's sound discretion and its denial of fimding will not be reversed absent an abuse of that discretion. Commonwealth v. Cannon, 954 Aid 1222, 1226 (Pa. super. 2008), denied, 964 A,2d 893 (Pa. 2009).

Instantly, the record shows that Appellant initially sought funds for several different experts, including a serologist and "someone" who could explain the effects of K-2 on a person based on statements the witnesses gave wherein they indicated that they had been smoking K2 immediately ptior to the incident. Appellant argued that he needed many expert witneses in . addition to one to explain the effects of K2. One of the other experts Appellant sought was a serologist, for lack of a more appropriate term, who he wanted to retain to test blood at the scene and on the clothing collected by the police to ascertain the amount, if any, of drugs in the blood. (N.T. 4/13/15, 35-37, 52-53). Appellant argued that once the blood was tested, the serologist . could ascertain the amount of dillgs the person from whom the blood originated. OI.T. 4/13/15, . 35-37, 52-53). Appellant then argued that once the serologist determined the level of drugs in the

17

blood itself, the expert could explain the effects of any drugs detected would have on a person's psyche and memory and could testify regarding those effects using the serologists findings. (N.T. 4/13/15, 52-53).

Following the grant of the mistrial, Appellant renewed his request for fruids for an expert who could testify to the effects of VO. It was Appellant's opinion that said expert was needed to review medical and toxicofogy reports, ascertain that drugs were in a person's system and the amount thereof, and testitÿ to the effects the amount of drugs would have had on the person. (N.T. 4/26/16, 4-8). He further argued that he needed an expert to inform the jury of the effects K2 has on an individual. Id.

This Coult did not commit an abuse of discretion by denying Appellant's two requests for an expert. Assuming that a serologist or some other expert could not only delect but then deterrnine the amount of drugs in a dried blood sample, Appellant failed to establish the relevance and materiality of the information he claimed the experts could provide The evidence herein indicated that the only person who left blood at the scene was Ms. Ostrow, the shooting victim. Ostrow did not identify Appellant as the person who fired the shots. Therefore, the issue whether she had drugs in her system, the amount thereof, and the effect they may have had on her had no relevance. There is no constitutional mandate that an expert be appointed at public expense to assist in the preparation of a defense. Commonwealth v. Bell, 706 A.2d 855> 862 (Pa. Super. 1998). In Bell the further stated that as a general rule "the trial court will not be found to have abused its discretion [in denying funding for an expert witness] in the absence of a clear showing as to the content, relevancy and materiality of the testimony of the potential Witness," Id.

18

Appellant's second request was properly denied because he failed to present any evidence that the witnesses, who admitted smoking K2 were even under the influence of it when they made their observations or evidence showing that the ingestion of even a small amount of K2 would affect one's ability to perceive and remember. Moreover, the evidence presented during the trial showed that none of the witnesses who were present when the crime occurred manifested any outward symptoms indicating that they were under the effects of an intoxicant immediately after the incident to a degree rendering them incapable of recalling the events they observed. Thus, the testimony of an expert about the effects of K2 would have been irrelevant and would have merely tended to confusc the jury and also prejudice the Commonwealth. In addition, this type of testimony under these circumstances would have been entirely speculative. Accordingly, for the fOregoing reasons, the denial of Appellant's two requests for funds for the experts described above was not error and it is suggested that said decision be affinnecl on appeal.

Appellant's sixth claim is that it was error to deny his Pa.R.Crim.P. 600 motion to dismiss, which he included in an omnibus pre-trial motion filed prior to the commencement of his second trial. A review of the record indicates that no Rule 600 bearing was requested by Appellant and none was held. For this reason alone, Appellant's claim should be deemed lacking in merit. If it is not deemed to have been waived, no relief should be forthcoming because a violation of Rule 600 did not occur here,

Rulc 600 Orovides in pertinent part:

> Rule 600. Prompt Trial
> (A) Commencement of Trial; Time for Trial;
> (I) For the purpose of this tille, trial shall be deemed to commence on the date the trial judge calls the case to trial, or the defendant tenders a plea of guilty or nolo contendere,

19

(2) Trial shall commence within the following time periods.

(a)    Trial in a court case in which a written complaint is filed against the defendant shall commence within 365 days from the date on which the complaint is filed.

(b)    Trial in a court case that is transferred from the juvenile court to the trial or criminal division shall commence within 365 days from the date on which the transfer order is filed.

(c)    When a trial court has ordered that a defendant's participation in the ARD program be terminated pursuant to Rule 318, trial shall commence within 365 days from the date on which the termination order is filed.

(d)    When a trial court has granted new trial and no appeal has been perfected, the new trial shall commcncc within 365 days from the date on which the trial court's order is filed.

(e)    When an appellatc court has remanded a case to the trial court, the new trial shall commence within 365 days from the date of the qn•itten notice from the appellate court to the palties that the record was remanded.

(C) Computation of Time

(1) For purposes of paragraph (A), periods of delay at any stage of the proceedings caused by the Commonwealth when the Commonwealth has failed to exercise due diligence shall be included in the computation of the time within which trial must commence. Any other periods of delay shall be excluded from the computation.

(2) For purposes of paragraph (B), only periods of delay caused by the defendant shall be excluded from the computation of the length of time of any pretrial incarceration. Any other periods of delay shall be included in the computation.

(3)(a) When a judge or issuing authority grants or denies a continuance:

(i)    the issuing authority shall record the identity of the party requesting the continuance and the reasons for granting or denying the continuance; and

(ii)    the judge shall record the identity of the party requesting the continuance and the reasons for granting or denying the continuance. The judge also shall record to which party the period of delay caused

> by the continuance shall be attributed, and whether the time will be included in or excluded from the computation of the time within which trial must commence in accordance with this rule.

A cursory review of the docket indicates that No Rule 600 violation occurred prior to either of Appellant's trial. With regard to his first trial, the complaint against him was filed on March 13, 2014, making the mechanical run-date March 14, 2015. Appellant's fir§t trial commenced on January 4, 2016, 662 days thereafter. A review of the docket reflects that 452 days were excludable time due to court unavailability, defense continuance requests, and Appe}lant'g unavailability. Subtracting (hose days from the 662 that elapsed, indicates that Appellant's first trial commenced within the 365 day threshold. Thus, a Rule 600 violation did not occur. [2]

With regard to Appellant's second trial, it commenced on May 24, 2016, 133 days after a mistrial was declared in his first trial. Rule 600 provides that a retrial shall commence within 120 days following the grant of a new trial. Pa.R.Crim.P, 600 (A)(2)(d). Therefore, no Rule 600 violation occurred and thus, no relief should be granted with respect to this claim.

Appellant next argues that this Court abused its discretion by denying his motion that the Court recuse itself. Appellant argued in the motion that the Court should recuse itself because it granted a Commonwealth request for a continuance in Appellant's absence from the coun room. (N.T. 4/23/15, 6). Generally, a party who asserts that a trial judge must be disqualified bears the

---

[2] Thc significant periods of time the Coun tOund cxchlddble wilh regard to Appellant's first trial were from 9/22/15 to 12/16/14 (85 days), 4/23/15 to 8/10/15 (109 days), and 8/10/15 to 1/4/16 (147 days. They total 34] days, Subn-acting these 341 days from the 662 days results in a figure of321 days, well below the 365 days the Rule requires a defendant to be tried within.

burden of producing evidence establishing bias, prejudice or fairness necessitating recusal. Commonwealth Darush, 459 A.2d 727, 731 (Pa. 1983). The standard of review for the denial of a recusal request is whether the court committed an abuse of discretion. Id.

A jurist asked to recuse him or herself first must make a conscientious determination of his or her ability to assess the case in an impartial manner, free of personal bias or interest in the outcome. Commonwealth y. Abu-Jamal, 720 A.2d 79, 89 (Pa. 1998). The judge must then consider whether continued involvement in the case creates an appearance of impropriety or would tend to undermine public confidence in the judiciary. Id. "This is a personal and unreviewable decision that only the jurist can make." Id. (citing Goodheart v. Casey, 565 A.2d 757, 764 (Pa. 1989)).

The grant of the continuance in this matter occurred on February 6, 2015. The Court granted it because a police officer was unavailable. Although Appellant was not present in the court room, stand-by counsel was and he objected to the Commonwealth's request. There was nothing improper in the grant of the continuance itself and Appellant did not suffer prejudice. Thus, the grounds for recusal raised by Appellant did not call into question this Court's partiality or ability to be fair. Nor did it raise an appearance of impartiality or tend to undermine the public's faith in the judiciary. Consequently, this Court properly denied the motion and that ruling should be affirmed.

Appellant's eighth issue alleges that he was denied due process because he was not present for several listings of the case. The law provides that a defendant is "guaranteed the right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute the fairness of the procedure." Kentucky v. Stincer, 482 U.S. 730, 745 (1987), Snyder v. Massachusetts, 291 U.S. 97, 105-106 (1934) (a defendant has a due process right "to be present in his own person whenever his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge,"). A defendant's presence, however, is not

22

constitutionally guaranteed "when presence would be useless, or the benefit but a shadow." 14, quotipg Snyder, 291 U.S. at 106-107.

Thus, the denial of a criminal defendant's right to be present at a critical stage of the trial proceedings should be considered in light of the entire record, and no relief should be granted where the defendant has not been prejudiced. United States v. Gagnon, ei al., 470 U.S. 522, 526527 (1985), citing Snyder v. Massachusetts, 291 U.S. at 115; Rushen v. SpaiÄ2, 464 U.S. 114, 117118 & n.2 (1983). see also Commonwealth v. Hoss, 283 A.2d 58, 67 (Pa. 1971) (although accused has right to be present at every stage of proceedings, no relief is due where he was not prejudiced); Commonwealth v. Ressler, 798 A.2d 221, 223 (Pa Super. 2002) (to be entitled to relief based on a claim that a defendant was improperly absent from some critical aspect of the case, the "[alppel[ant must demonstrate some prejudice resulting from the court's actions").

On the dates cited by Appellant, nothing critical to his case or defense occurred. The maltcr was before the Court simply [Or scheduling purposes and not to decide anything of importance to the case. These were not critical stages in Appellant's prosecution. Appellant failed to establish or even allege how his absence was prejudicial. For these reasons, it is suggested that relief be denied with respect to this claim.

Ninth, Appellant claims that the prosecutor denied him a fair trial when he commented, during his opening statement that "Rachel Ostrow don't have a lot of money. She don't live in Center City. She don't have nice clothes." Appellant's 1925(b) Statement, Issue 9. This claim should be deemed waived because Appellant failed to cite to the record, the alleged comment in his 1925(b) statement.

The claim Should also be deemed waived because Appellant did not lodge any objections during the prosecutor's opening argument. Seg Commonwealth v. Bullock, 2008 PA Super 83 (Pa. Super., filed April 28, 2008) (failure to Object below renders appellate claim waived and

23

unreviewable); <u>Commgnwealth v. Colon,</u> 846 A.2d 747, 752 (Pa. Super. 2004) (claim waived on appeal where appellant moved in limine below, court denied motion, and appellant did not object to ruling).

Assuming that the claim is properly preserved, Appellant¹s claim would still fail, because "comments by a prosecutor do not constitute reversible error unless the unavoidable effect of such comments would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant so that they could not weigh the evidence objectively and render a true verdict" <u>Commonwealth v- Hawkins,</u> 701 A.2d 492, 509 (Pa 1997), <u>Accord</u>, Commonwealth v. Sam, 635 A.2d 603, 608 (Pa. 1993).

A review of the prosccutor's opening remarks shows that he made the Iò\lowing comment:

> And you need to understand that Ms. Ostrow, when she comes up here and testifies, Rachel, she doesn't come from a prctly world where she's going to be up there in her Sunday best. She lives in a hard part of the city. And she still has to go back to that neighborhood after she testifies bcfòre yau here today. And you have to understand where she comes from. She doesn't livc down in Center City. She doesn't live in a nice neighborhood. She's had a rough time. So when she walks through that door, I need you to evaluate her for who she is and not how you think she appears.

(N.T. 5/25/16, 35-36),

There is nothing in this comment that would prejudice the jury. Advising the jury of MS. Ostrow's• anticipated appearance and asking it not to hold it against her was a proper topic for an opening statement because it merely, in effect, requests that the jury not judge her on her appearance, but solely on her testimony. The comment did not assert, even by innuendo, that the jury should believe her because of her circumstances and thus, the prosecutor did not engage in prosecutorial misconduct. Accordingly, the claim should be dismissed because it was waived. Even if it is deemed not to have been, it should not result in the grant of relief because it lacks

24

merit.

In his tenth claim, Appellant asks that he be granted a new trial because this Court permitted the prosecutor to cross-examine his witnesses and ask them leading questions absent a plea of surprise from the prosecutor or a claim that the witnesses had become adversarial. As was the case with Appellant's ninth claim, this issue should be deemed waived because Appellant has failed to articulate where in the record the alleged improprieties can be found.

In any event, this Court's review of the record Fails to yield any indication that the use of leading questions by the prosecutor was improper. For example, with respect to Abdul Scott, it was clearly lhe case that he was a hostile witness. He refused to even acknowledge that Appellant was his half-brother or that he knew him. (N.T. 2/25/16, 138-139). There was no need to request permission to treat him as a hostile witness after he gave such testimony.

The element of surprise is no longer an absolute requirement in the excrcisc of the court's discretion to allow a party to treat its own witness as a hostile witness. Commonwealth v. Jones 434PaSuper.469, 644 A.2d 177 (1994); C01monwealth v. Brady, 507 A.2d 66, n (Pa. 1986). Because the Pennsylvania courts now permit parties to contradict or impeach witnesses called by them without a strict requirement of surprise when the interests of truth and justice seem to require it, no error occurred here. 14.

Moreover, a prosecutor is entitled to confront any witness with a prior inconsistent statement, and is entitled to do so through the use of leading questions. Under Pennsylvania Rule of Evidence 613, witness may be examined concerning a prior inconsistent statement made by the witness, whether written or not..." Pa.R.E, 613(a) (emphasis omitted). And Rule 607 provides that, "[t]he credibility of any witness may be attacked by any party, including the party calling the witness." Pa.R.E- 607(a).

Finally, Rule 61 1(c) states that, "[w]hen a party calls a hostile witness interrogation may be by leading questions ... Pa.R.E. 611 (c). Sgg also L. Packei & A, Poulin, Pennsylvania Evidence, § 611.3, at 468 (1987) ("When a witness is hostile or biased against the party calling him, examination by leading questions on direct or redirect is permitted"), Thus, there was nothing improper about the prosecutors use of leading questions in his examination of Abdul Scott or the other witnesses, and this Court did not abuse its discretion in overruling Appellant's alleged objections thereto. Sce Commonwealth v. Settles, 275 A.2d 61, 63 (Pa. 1971) (use of lehding questions is within discretion of trial court, particularly where witness is reluctant to testify against defendant); Commonwealth v. Bell, 476 A.2d 439, 454 (Pa. Super, 1984) ("the use of leading questions lies within the discretion of the trial court and a court's decision thereon will not be reversed absent an abuse of its discretion") (citations omitted).

Appellant's eleventh issue contends that this Court erred by permitting the Commonwealth to introduce Abdul Scott's statement to police as substantivc evidence. The claim should bc deemed waived because Appellant did not cite to the record or explain why he believes this to be the cxse. AS noted above, the failure to set forth an issue with sufficient specificity to permit review of the claim results in its waiver.

If the claim is preserved, no relief should be granted. A witness's prior inconsistent statement is admissible as substantive evidence where the witness is available for cross examination and the statement was: (l) given under oath at a hearing; (2) reduced to a writing that was signed adopted by the witness; or and (3) a contemporaneous verbatim recording of the witness's Commonwealth v. Brady, statement. 507 A.2d 66, 70 (Pa. 1986); Cpmmonweqbth v. Lively, 610 A.2d 7, 10 (Pa. 1992); Commonwealth v. Presbury, 665 A.2d 833, 831-832 (Pa.Super. 1995); Pa-R.E. 803.10).

Instantly, the Commonwealth established through the testimony of Abdul Scott and the detective who interviewed him that Scott signed and adopted the statement and that it was a contemporaneous verbatim recording of what Scott related to police. The Commonwealth therefore met its burden of proof and this Court did not en by allowing the Commonwealth to introduce the contents of Scott's statement as substantive evidence. Accordingly, no relief should bc forthcoming on this claim.

Twelfth, Appellant contends that this Court erred by permitting the Commonwealth to introduce statements given to police by Luz Ambert-l?rieto, Rachel Ostrow, Patricia Clarke, and Officer Rosa. Again, Appellant did not indicate wherc in thc record the alleged errors appear and articulate why he thinks this Court committed error by permitting the Commonwealth to introduce the prior consistent statements of these witnesses.

In any event, no error occurred because Appellant alleged that each of the fòregoing witnesses testified falsely and inconsistently. Therelöre, the Commonwealth was permitted to introduce their prior consistent statements to rebut Appellant's assertions. Pennsylvania Rule of Evidence 613, entitled, "Prior Statements of Witnesses", provides in part:

> (c) Evidence of Prior Consistent Statement of Witness
> Evidence of a prior consistent statement by a witness is admissible for rehabilitation purposes if the opposing party is given an opportunity to crossexamine the witness about the statement, and the statement is offered to rebut an express or implied charge of:
> (I) fabrication, bias, improper influence or motive or faulty memory and the statement was made before that which has been charged existed or arose; or
> (2) having made a prior inconsistent statement, which the witness has denied or explained, and the

27

consistent statement supports the witness' denial or explanation.

Pã.R.E. 613. In Commonwealth v. Cruz, 414 A.2d 1032 (Pa. 1980), the Supreme Court stated:

> It is well-established that a trial court may, in its discretion, permit introduction of a prior consistent statement of a witness in order to rebut a claim of recent fabrication in the witness's trial testimony. Here, by bringing out the fact that a portion of Officer Ghee's trial testimony was not contained in his statement to Detective Gallo, defense counsel clearly advanced recent fabrication. Therefore, it was not error for the court to permit the Commonwealth to rebut the claim of recent fabrication by introducing Officer Ghee's prior consistent statement. Cruz, 414 A.2d at 1036.

In the event that the Appellant argues that it was error to allow the admission of the prior consistent statements during the direct examination of thc witnesses, no relief is duc him. Our Supreme Court has ruled that in deciding whether a witness's testimony was attacked so as to permit the introduction of a prior consistent. statement for "rehabilitation" purposes, a court may rely on the opposing party's opening and closing arguments as well as its cross-examination of the witness, and that prior consistent statcmcnts may propcr[y be admitted in anticipation of an attack on the witness's credibility. See Commonwealth v Wilson 861 A.2d 919, 930 and n.11 (Pa. 2004) (trial court has discretion to allow a witness's prior consistent statement to be admitted in anticipation of attacks on his credibility; a trial court's admission of a prior consistent statement may be upheld even where the defense strategy of attacking the witness's credibility was not clear during cross-examination of the witness but instead only became clear during closing argument); Commonwealth V. Smith, 540 A.2d 246, 257-58 (Pa, 1988) (holding that trial court did not abuse its discretion in admitting witness's prior consistent statements before that witness was actually impeached on cross-examination because appellant's defense, as demonstrated by his opening

argument, centered around impeaching the credibility of that and other witnesses). Additionally, "[i]t is not necessary that the impeachment be explicit, i.e., that an actual allegation of recent fabrication be made, but only that a jury be able to reasonably infer that such is occurring." Commonwealth v. Gore, 396 A.2d 1302, 1307 (Pa. Super. 1978); accord Commonwealth v. Hunzer 868 À.2d 498 (Pa. Super, 2005),

Consequently, for all of the foregoing reasons, it is suggested that Appellant be denied relief with respect to this claim.

Next, Appellant submits that this Court denied him a fair trial by permitting the Commonwealth to introduce as substantive evidence the photographs of Appellant police showed to Luz Ambert-Prieto and Abdul Scott. By again failing to articulate why he believes error occurred, it is submitted that Appellant waived review of this claim for purposes of appeal because this Court cannot discern what the basis of the claim may be.

As discussed in disposition of Appellant's third issue, the showing of Appellant's photograph to the above witnesses did not violate his constitutional rights or taint those witnesses' identification of him because the witnesses knew him prior to the identification sessions. Therefore, if the claim is not deemed to have been waived, it is suggested that Appellant be denied relief with respect thereto.

Appellant's fourteenth issue argues that this Court erred by permitting the Commonwealth to introduce Ms. Ostrow's medical records and the conclusions reached therein to establish the cause of her injuries because the Commonwealth did not present as a witness the doctor who treated her, which denied him the opportunity to cross-examine the doctor. (N.T. 5/26/16, 142 144). Relief should bc denied with respect to this claim because the admission of the records was harmless error.

29

Pa.R.E. 803(6), applies to "Records of Regularly Conducted Activity?' including hospital records and it is "consistent with prior Pennsylvania case law" (Official Comment). It applies to medical documents to the extent that they show the fact of hospitalization, treatment prescribed, and symptoms given. Commonwealth v. Christy, 656 A.2d 877, 884 (Pa. 1995). Medical opinion contained in the records and proffered as expert testimony is not admissible however where the doctor is not available for cross-examination," Commonwealth V. DiGiacomQ, 345 A.2d 605, 608 (Pa. 1975) (citations omitted); accord Phillips v. Gerhart, 801 A.2d 568, 575 (Pa. Super. 2002) ("We have long held that a medical opinion contained in a hospital record is not admissiblc unless 1110 doctor who prepared the report is available for in-court, cross,,examination regarding the accuracy, reliability, and veracity of his or her opinion"); Commonwealth v. McMaster, 666 A.2d 724, 731 (Pa.Supcr, 1995) ("Appellant could not introduce the medical opinion of his personal physician, via copies of medical records, without calling the doctor as a witness who would then be subject to cross-examination").

Ms. Ostrow's medical records were properly admitted to establish that she suffered a gunshot wound. Even if the admission was improper, relicf should be denied Appellant because the error was harmless. An error will be deemed harmless where the appellate court concludes beyond a reasonable doubt thàt the error could not have contributed to the verdict. If there is a reasonable possibility that thé error may have contributed to the verdict, it is not harmless. In reaching that conclusion, the reviewing court will find an error harmless where the uncontradicted evidence of guilt is overwhelming, so that by comparison the error is insignificant. Commonwealth v. Young, 748 A.2d 166 (Pa. 1999); See Commonwealth v. Mitchell, 839 A•2d 202, 214 -215 (Pa. 2003).

To determine whether an error is harmless, it must meet the following three-parl test: (I) the error did not prejudice the defendant or the prejudice was <u>de minimis;</u> or (2) the erroneously admitted evidence was merely cumulative of other, untainted evidence which was substantially similar to the erroneously admitted evidence; Or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the etTor was so insignificant by comparison that the error could not have contributed to the verdict. See <u>Commonwealth v. Egy,</u> 612 A.2d 1349, 1350 (Pa. 1992) (<u>citing</u> <u>Commonwealth v. Williams,</u> 573 A,2d 536, 538539 (Pa. 1990)).

Instantly, the Commonwealth introduced other evidence establishing that Ms. Ostrow had been shot. Ms. Ostrow testified as did Abdul Scott, who testified that he heard gunshots and realized that Ms. Ostrow suffèred gunshot wounds. (N.T. 5/25/16, 54-55, 147-148). In addition, hospital personnel recovered metal shards comprised of metals consistent with projectiles. (NT. 5/26/16, 123-125). The medical records, therefore, merely confirm and corroborate the witness testimony, For all of the foregoing reasons, no relief should be granted on this claim because the error was harmless.

Appellant's fifteenth issue argues that this Court deprived him of a fair trial by permitting the Commonwealth to introduce the recording of the 91 1 radio call because the contents thereof, i.e., the statements of Ms. Clarke and Abdul Scott, were hearsay. This claim was raised in Appellant's fourth issue, As noted in this Court's discussion of the issue above, the claim wholly lacks merit and for those same reasons, it is suggested that no relief be granted With respect thereto.

In his sixteenth issue, Appellant asserts that he was denied a Fair trial as a result of a ruling by this Court prohibiting him from cross-examining Luz Arnbert-Prieto about the fact that she

was serving a probationary sentence at the time she gave her statement to police. This claim should be deemed waived since Appellant did not Object when this Court made the ruling precluding him from cross-exarnining her about her probation. (N.T. 5/25/16, 4-5).

Seventeenth, Appellant again complains that he was deprived of a fair trial because this Court permitted the Commonwealth to introduce evidence related to his prior conviction for robbery. This instant Claim mirrors the sub-claim Appellant raised in his fourth issue in his 1925(b) statement. This Court suggests that it be denied for the same reasons set forth above.

In his eighteenth issue, Appellant argues that he was deprived of a fair trial bccausc this Court permitted the Commonwealth to introduce policc reports and police documents containing hcarsay. Again, because Appellant did not identify the documents to which he refers in his 1925(b) statement, he has waived review of this claim, It is not the job of this Court to pcrusc thc record and identify the documents, the admission of which he now complains,

Appellant's nineteenth issuc asserts that this Court denied him a fair trial because il pcrmiitcd the prosecutor to comment on the fact that he represented himself at trial. Relief should be denied on this claim. Appellant waived review, first, because he did not refer to the location jn the record where the alleged comments appear and, second, because he did not object to any portion of the prosecutor's closing argument. As noted above, When a defendant's claim lacks sufficient specificity to allow the court to address the claim the issue ig waived for purposes of appeal. It is also noted above that the failure to Object or preserve an issue during trial waives that issue fot purposes of appeal, See Commonwealth v. Andrulewiçz, 911 A,2d 162, 168 (Pa. Super. 2006) (failure to object to allegedly prejudicial remarks results in waiver); Commonwealth v. Harris, 884 Â.2c1 920, 926 n.5 (Pa. super. 2005) (same).

Twentieth, Appellant insists that he was deprived of a fair trial because the Court provided the jury with written jury instructions with respect to the crimes of Aggravated Assault with a

Deadly Weapon and Aggravated Assault-Causing Seriöus Bodily Injury, (N.T. 5/27/16, 37-38).

Pa.R.Crim.P. 646(B) permits a judge to give the jury "written copies of the portion of the judges

charge on the elements of the offenses, lesser included offenses, and any defense upon which the

jury has been instructed...." Thus, no error occurred by giving the jury the identified jury

instructions. [11]

In issue twenty-one, Appellant complains that he was deprived of a fair trial because this

Court refused to give the jury numerous defense exhibits. (N.T. 5/27/16, 38-43). The request was

dcnied because Appellant stated that he had an objection to providing the jury with certain

Commonwealth exhibits and because the Court believed that if it sent back certain exhibits and not

others it may cause the jury to give greatcr weight to those it received, it advised the jury that il had

10 rely on its recollection. (N.T. 5/27/16, 41-42).

A trial court's decision as to which cxhibits may be taken out with a jury is within the sound

discretion of the trial court and will not be reversed absent abuse of that discretion.

_____

[11] It ignoted that the record indicates that this Comt did not sendNTitten jury instmctioas backwith the jury. (N.T. 5/27/16, 38). The transcript is incorrect because the Court did provide them to the jury. (N.T. 10/17/16, 311-12).

Commonwealth v. Bango, 742 A.2d 1070 (Pa. 1999); Commonwealth v, Hawkins, 701 A.2d 492

(Pa. 1997). An abuse of discretion may not be found merely because an appellate court might

have reached a different conclusion, but requires a result of manifest utüeasonableness, or

partiality, prejudice, bias, or ill-will or such lack of support so as to be clearly erroneous,

Commonwealth v, Brougher, 978 A.2d 373, 376 (Pa. Super. 2009). The propriety of the trial

court's decision to allow the jury to review eyen properly admitted exhibits or have accurate trial

testimony read to them during deliberations is examined in relationship to the issues raised at

trial. Commonwealth v. Riggins, 386 A.2d 520, 525 (Pa, 1978).

Instantly, no abuse of discretion occurred, Had the Court agreed to Appellant's request, the

Court would have been compelled to give the jury the Commonwealth's exhibits for the sake of

fairness. In a trial that took only days to try and involved less than ten witnesses, the Court's refusal to provide the jury with Appellant's exhibits certainly was not an abuse of discretion. The jury was able to reach a verdict shortly after the Court denied its request thereby demonstrating that Appellant was not prejudiced by the ruling, Accordingly, for the reasons stated, it is suggested that relief be denied with respect to this claim.

In issue twenty-two, Appellant argues that the evidence was insufficient to sustain his convictions because thc convictions are based entirely on Abdul Scott's statement to police, which Appellant claims, inter alia, was contradicted by other trial testimony and was wholly unreliable because Scott allegedly smoked K2 prior to his interview and he repudiated and disavowed his prior statements. Appellant also claims that the evidence was insufficient because he presented valid evidence of alibi and evidence showing his appearance on the night of the incident was different as were the clothes he wag wearing that night. Finally, Appellant asserts that the evidence was insufficient because the Commonwealth did not present any physical evidence connecting him to the crime.

In essence, Appellant is arguing that the evidence was insufficient because of inconsistencies in the evidence and a lack of other evidence. Such claims do not raise or preserve a sufficiency claim. In order to preserve a challenge to sufficiency of the evidence on appeal, an appellant must state with specificity the element or elements of the crime upon which he alleges the evidence was insufficient. See Commonwealth v. Veon, 109 A.3d 754, 775 (Pa. Super. 2015), citing Commonwealth v. Garland, 63 A.3d 339, 344 (Pa. Super, 2013), and Commonwealth v. Gibbs, 981 A,2d 274, 281 (Pa. Super- 2009). Here, Appellant's Rule 1925(b) Statement fails to identity which specific elements of the crimes he was convicted of committing

34

that the Commonwealth failed to establish. See Garland. Accordingly, for this reason it is suggested that Appellant's sufficiency claim be deemed waived on appeal,

In determining whether the evidence was sufficient to meet the Commonwealth's burden of proof, the reviewing court must view the evidence in the light most favorable to the Commonwealth as verdict winner, and draw all reasonable inferences favorable to the Commonwealth in determining whether there iS sufficient evidence to find every element of the crime beyond a reasonable doubt. Commonwealth v. Bryant, 67 A.3d 716, 721 (Pa. 2013). The entire trial record must be evaluated and all evidence actually received must bov consideredCommonwealth v. Reed, 990 A.2d 1158, 1161 (Pa. 2010); Commonwealth v. Laird, 988 A.2d 618, 624-625 (Pa. 2010); Commonwealth v. Segida, 985 A.2d 871, 880 (Pa. 2009). only evidence that supports the verdict may be accepted as truc tor purposes of appellate review. Commonwealth v. Breakiwn, 571 A.2d 1035, 1042 (Pa. 1990).

A sufficiency analysis docs not consider the credibility, reliability, or weight of the evidence. Commonwealth v. Bristow, 538 A.2d 1343, 1345-1346 (Pa. Super. 1988). Rather, a sufficiency claim must accept the credibility and reliability of all evidence that supports the verdict. Breakiron, 571 A.2d at 1042,.

Instantly, the jury determined that both of Abdul Scott' $ identifications of Appellant were credible despite Scott's testimony that he saw nothing and did not tell police that Appellant was the shooter. Scott's identification of Appellant immediately after the incident had the ring of truth because Scott's initial statements were excited utterances, Which, as noted above, have indicia of reliability. That reliability was solidified by the fact that immediately after the shooting he told every person 'he had contact with that Appellant was the person responsible for the shooting. There was very minuscule

chance that the identification was wrong given that Appellant was Scott's half-brother and Scott did not appear to be under the influence of an intoxicant at the time of the incident given his actions to render aid to Ms. Ostrow immediately after the shooting,

His statement to police also was reliable because he did not appear to be under the influence of an intoxicating substance and he accurately described what occurred during the incident. Thus, his identification of Appellant was sufficient to sustain the convictions. The law is clear that a single witness's positive identification of the accused is sufficient to establish his identity as the robber. Commonwcaltll v. Thomas, 539 A.2d 829, 931 (Pa. Super. 1988). See also Commonwealth v. Boone 429 A.2d 689, 691 n.2 (Pa. Super. 1981) ("the testimony of one witness may suffice to establish the identification of the accused"). In addition, any inconsistencies in a witnesses' testimony go to the weight, not sufficiency, of the evidence. Sce Commonwealth v. Trinidad, 96 A,3d 1031', 1038 (Pa. Super. 2014) (stating (l) variances in testimony go to credibility of witnesses and not sufficiency of evidence, and (2) mere conflict in testimony does not render evidence insuffiCicnt because il is within province of fact-finder to determme weight to be given to testimony and to believe all, part, or none of evidence), appeal

denied 99 A.3d 925 (Pa. 2014).

Although Appellant presented evidence of alibi, as noted above, defense evidence is not considered in determining whether the evidence was sufficient to sustain a conviction. It is noted that Appellant's evidence failed to definitively establish an alibi.

Finally, the fact that Scott repudiated the contents of hi$ statement to police and railed to identify Appellant during the trial did not rcndcr the evidence insufficient because his Statement, wherein he identified Appellant as the shooter, was admitted as substantive evidence. In Commonwealth v. Brown, 52 A.3d 1139, 1171 (Pa. 2012), the Pennsylvania Supreme Court

36

stated that "criminal convictions which rest only on prior inconsistent statements of witnesses who testify at trial do not constitute a deprivation of a defendant's right to due process of law, as long as the prior inconsistent statements, taken as a whole, establish every element of the offense charged beyond a reasonable doubt, and the finder-of-fact could reasonably have relied upon them in arriving at its decision." Instantly, the contents of Scott's statement, by themselves established the elements of the crimes with which he was charged. Therefore, the evidence was sufficient and relief should be denied with respect to this claim.

In issue twenty-three, Appellant contends that the verdict was against the weight of the evidence for the very same reasons he submitted with respect to the previous claim. in issue 24, he claims that this Court committed a duc process violation by dcnying his postusentence motion weight claim, Neither claim entitles Appeltant to relief.

'I'hc standard in reviewing a weight of the evidence claim is well-settled:

> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's convict ion that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest ofjustice.

Commonwealth v. Clay, 64 A.3d 1049, 1055 (Pa. 2013) (emphasis and citations omitted); see also CommonwcaEth v, Sanchez, 36 ,3d 24, 27 (Pa. 2011) (stating that "[r]elief on a weight of the evidence claim is reserved for extraordinary circumstances, When the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be give n another opportunity to prevail." (citation omitted)),

37

The initial determination regarding the weight of the evidence is for the fact-finder. Commonwealth v. Jarowecki, 923 A.2d 425, 433 (Pa. super. 2007). The trier of fact is free to believe all, some or none of the evidence. 14. A reviewing court is not permitted to substitute its judgment for that of the fact-finder. Commonwealth v. Small, 741 A.2d 666, 672 (Pa. 1999). When the challenge to the weight of the evidence is predicated on the credibility of trial testimony, appellate review of a trial court's decision is extremely limited. Unless the evidence is so unreliable and/or contradictory as to make any verdict based thereon pure conjecture, weight of evidence claims shall be rejected. Commonwealth v. Ros-setti, 863 A-2d 1185, 1191 (Pa. Super. 2004).

Applying the foregoing to the instant matter, the verdict did not shock the conscience for the samc reasons sct 10rth above. Abdul Scott's post-incident identifications of Appellant were reliable. In addition, the jury clearly had grounds to reject Scott's testimony that Appellant was not his half-brother and that the person he identified as the shooter was not Appellant because that testimony was incredible, if not perjurious.

It is further noted that Appellant's claim of alibi was not supported by the documents he presented in his defense. The prosecutor showed that the records did not establish that Appellant was twenty minutes from the scene of the shooting when it occurred. See N.T. 5/26/16, 193-196. In addition, the testimony Of Jabbar Scott did not have the ring of truth because it was contradicted by Jabbar's own testimony and the other evidence in the case.

In presiding over the trial and asse$sing the witnesses' testimony, this Court deemed it credible despite some inconsistencìeg and the other factors cited bÿ Âppellant in support Of his weight claim. The law supports that finding. Seg Commgnwealth v. Beckham, 503 Ã.2d 443, 446 (Pa. Super. 1986) (weight claim cannot be predicated on alleged discrepancies between police statements and trial testimony; weight claim depends on showing that trial testimony is

hopelessly contradictory), citing Commonwealth v. Goldblum, 447 A.2d 234, 240 (Pa. 1982); CornmQnweaIth v. Simmons, 662 A.2d 621, 630 (Pa. 1995) (where defendant raises only minor inconsistencies in witnesses' testimonies, verdict is not against the weight of the evidence). A fact finderk decision to credit a witness is even less assailable where, as here, defendant has explored the alleged inconsistencies in depth on cross examination (N.T. 5/29/14, 15-22, 29-39). See Commonwealth v. Cousar 928 A.2d 1025, 1036 (Pa. 2007) (rejecting challenge to weight of the evidence on basis of witness credibility where fact finder credited the testimony of witnesses who had been subjected to cross-examination). Thus, it is clear that this Court did not commit an abuse of discretion in denying Appellant's weight claim and it is respectfullÿ suggested that the decision to deny Appellant relief on his weight claims be affirmed for the reasons statcd.

Defendant next asserts that this Court denied him due process of law by failing Lo grant him a new trial based on newly discovered evidence. That evidence consists of a letter involving a transaction at a convenience store that Appellant alleges would show that, at or about the time of the crime herein, he was elsewhere.

In order to be entitled to a new trial predicated on after-discovered evidence, a defendant must establish that the evidence: l) was discovered after the trial and could not have been obtained earlier through the exercise of reasonable diligence; 2) is not merely corroborative or cumulative; 3) will not be used solely to impeach a witness's credibility; and, finally, 4) will likely result in a different verdict if a new trial is granted, Commqnwealth v, Chamberlain, 30 A.3d 381, 414 (Pa. 2011). If any one of these elements fails, the claim fails without further analysis, Id.; Commonwealth v. Npcerq, 582 A.2d 376, 382 (Pa. Super. 1990). "Unless there has been a clear abuse of discretion, the refusal by the court to grant a new trial on the basis of after-discovered evidence will not be disturbed.' CommQL-y.ealth-Y2-B.e.nso.n, 463 A.2d 1123, 1125(Pa. Super. 1983).

Appellant merely states that he received notification that the previously unavailable material was now available. He did not present the Court with any information or advise the Court about what information the material contained, Thus, he failed to meet his burden of proving that the information would likely result in a different verdict. In addition, the material is cumulative of evidcncc Appellant presented at trial and would not result in a different outcome, It would not have established that Appellant made the purchase he alleges at thc time the crime was committed. Anyone could have had Appetlanl's bank card and made the transaction. For all ofthe foregoing reasons, it is suggested that relief be denied with respect to this claim.

Appellant's next claim asserts that this Court deprived him of due process of law and committed an abusc of discretion by imposing consecutive sentences pursuant to the same statutes. A review of the record shows that this Court imposed consecutive sentences on the two Attempted Murder charges, which pertained to Abdul Scott and Ms. Ostrow,

The Superior Court has observed that "the decision whether to impose a sentence consecutively or concurrently is a discretionary matter for the trial court." Commonwealth v. Eckles, 625 A.2d 1265, 1266 (Pa. super. 1993), appeal denied, 651 A,2d 532 (Pa. 1994). Section 9721(a) of the Sentencing Code "'affords the sentencing court discretion to impose its sentence concurrently or consecutively to other sentences being imposed at the same time or to sentences already imposed. Any Challenge to the exercise of this discretion ordinarily does not raise a substantial question.' " Commonwealth v. Pass, 914 A.2d 442, 446-447 (Pa, Super. 2006), quoting Commonygalth-½-MgrC5, 889 A.2d 608, 612-613 (Pa. super. 2005); see Commonwealth

v. Graham, 661 A.2d 1367 (Pa., 1995), dgnigd, 517 U.S. 1157 (1996)("the general rule in Pennsylvania is that in imposing a sentence the court has discretion to determine whether to make it concurrent with or consecutive to Other sentences then being imposed or other sentences

40

previously imposed"). Thus, "[i]n imposing a sentence, the trial judge may determine whether, given the facts of a particular case, a sentence should run consecutive or concurrent with another sentence being imposed." Cornrnonwealth v. Wright, 832 A.2d 1 1 04, 1107 (Pa. Super. 2003); see also Commonwealth v. Perry, 883 A.2d 599, 603 (Pa. Super. 2005).

Here, no abuse of discretion occurred by imposing sentences on the two Attempted Murder charges and ordering that those be served consecutively to one another. There were separate and distinct crimes committed by Appellant, involving separate victims. Moreover, the sentence reflects the seriousness of both criminal acts committed by Appellant. There is nothing in the record to suggest that Appeflant was entitled to a "volume discount" for his crimes by having the sentences run concurrently, See Commonwealth v. Hoag, 665 A.2d 1212 (Pa. Super. 1995); Commonwealth v. Mouzon, 828 A.2d 1126 (Pa. Super. 2003)(concern against running sentences concurrently by way of habit allowing criminals to recewe "volume discounts" for their separate criminal acts), Any lesser sentence imposed by the trial court would have depreciated the seriousness of the offenses committed by Appellant. Thus, no abuse of discretion occurred.

To the extent that Appellant arg1es that separate sentences could not be imposed on both Attempted Murder charges because they arose out of the same criminal act, thereby requiring merger, said claim, which implicates the legality of the sentences imposed, Jacks merit. In Appellant's case, he committed separate acts of Attempted Murder when he fired shots at both of the victims. "Where there are multiple victims of a defendant's criminal conduct, separate punishments are not barred by the merger doctrine. This ttme even where there is only a single criminal transaction. Commonwealth v. Gray, 489 A.2d 213 (Pa. Super. '1985)." Commonwealth v. Burdge, 562 A.2d 864 (Pa. super. 1989).

41

For all of the foregoing reasons, it is suggested that relief be denied with respect to this claim.

In his twenty-seventh and final claim, Appellant argues that he was deprived of due process because the Court allegedly back-dated orders denying his motions. Quite frankly, this Court does not understand the argument. Because Appellant failed to sct forth the issue in an understandable cogent manner, it is suggested that the claim be dccmed waived and that relief be denied with respect to this claim.

CONCLUSION

Based on the foregoing, it is respectfiEliy suggested that the judgment of sentence be affirmed.

BY THE COURT,

Date: 6/26/2017

Daniel D. McCaffery, J.

CERTIFJCATION OF SERVICE

I, James Molinari, Esquire, Law clerk to the Honorable Daniel D. McCaffery hereby certifies that on the he 26th day of June, 2017, by first class mail, postage prepaid, a true and correct copy of the attached opinion was served upon the following:

Kareem Stansbury
NO. MS-4084
SCI-Camp Hill P.O. Box 200 camp Hill, PA 17001-0200

Hugh Burns, Esquire
Chief-Appeals Unit
Office of the Philadelphia

District Attorney
Three South Penn Square
Philadelphia, PA 19107

James Molinari, Esquire